IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LARRY DECHANT,

    **Plaintiff,**

    v.

JAMES GRAYSON AND
RICHARD HANKS,

    **Defendants.**

Case No. 2:20-CV-02183-HLT

## MEMORANDUM AND ORDER

    Undersheriff James Grayson of the Trego County Sheriff's Office executed a search warrant on Plaintiff Larry Dechant's home on April 7, 2019. Dechant alleges that Undersheriff Grayson used excessive force in executing the warrant and that his use of force constitutes battery and negligence under Kansas law. Dechant also alleges Trego County Sheriff Richard Hanks had in place an official policy or custom that caused the constitutional violation Dechant suffered. Dechant alleges a 42 U.S.C. § 1983 claim against Undersheriff Grayson in his individual and official capacities and against Sheriff Hanks in his official capacity. Dechant also alleges state law claims against both men.

    Sheriff Hanks and Undersheriff Grayson move to dismiss the § 1983 official capacity claims asserted against them. Sheriff Hanks also moves to dismiss the state law negligence claim against him. The Court grants the motion. Because Dechant does not plausibly allege that an official policy or custom caused his injury, the Court dismisses the § 1983 official capacity claims against both men. The Court also dismisses the state law negligence claim against Sheriff Hanks because Dechant does not plausibly allege breach of a duty.

**I.    BACKGROUND**[1]

Undersheriff Grayson obtained a search warrant to search Dechant's home in Wakeeney, Trego County, Kansas. When Dechant opened the door during execution of the warrant, Undersheriff Grayson pointed his firearm in Dechant's face and ordered Dechant to the ground. Undersheriff Grayson then aggressively rushed towards Dechant and deliberately jumped or fell on Dechant even though Dechant was complying in a nonthreatening manner. Dechant was slammed to the floor. Undersheriff Grayson then lifted Dechant's shoulders and torso off the ground and twisted Dechant as he looked through Dechant's pockets. Dechant required spinal fusion surgery and walks with a cane as a result of this encounter.

Sheriff Hanks received notice of Undersheriff Grayson's conduct, at the latest, when Dechant filed a notice of claim under the KTCA. Sheriff Hanks did not meaningfully review the video recordings of the incident, speak to Dechant or the other officers present at the scene, or punish Undersheriff Grayson. Dechant subsequently filed this lawsuit asserting § 1983 claims and state law claims.

**II.    STANDARD**

Courts will dismiss a cause of action under Rule 12(b)(6) when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* (citation

---

[1] These facts are taken from the well-pleaded allegations of the third amended complaint, and, consistent with the standards for evaluating motions to dismiss under Rule 12(b)(6), the Court assumes the truth of these facts for purposes of analyzing the motion to dismiss.

2

omitted). Although courts must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79.

## III. ANALYSIS

Sheriff Hanks and Undersheriff Grayson move to dismiss Dechant's official capacity § 1983 claims. They argue that Dechant does not plausibly allege that an official policy or custom caused his injury because Dechant relies on allegations that are conclusory, relate to conduct that occurred after April 7, 2019, or depend on Undersheriff Grayson being a final policymaker. Sheriff Hanks additionally moves to dismiss the state law negligence claim for failure to state a plausible claim. For the following reasons, the Court agrees.

### A. Official Capacity § 1983 Claims Against Sheriff Hanks and Undersheriff Grayson

Dechant alleges official capacity § 1983 claims against Sheriff Hanks and Undersheriff Grayson under the theory articulated in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978). In *Monell*, the Supreme Court held that a municipality may be liable under § 1983 for constitutional violations that are the result of an official policy or custom. *Id.* An official policy or custom may take the following five forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

3

*Waller v. City & County of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019) (citation omitted). And the official policy or custom must have a <u>direct causal link</u> to the constitutional violation. *Id.* at 1284.

Looking at the five forms, Dechant does not allege a formal regulation or policy statement. But he attempts to allege an informal custom amounting to a widespread practice that is so permanent and settled as to constitute a custom or usage with the force of law. Dechant alleges that Sheriff Hanks:

> promulgated and created a policy, custom and practice under which deputies such as [Undersheriff Grayson] were authorized and/or allowed to use force against citizens who were not under arrest without requiring that such citizens first engage in any action which was a threat to the deputies and without requiring such deputies fill out use of force reports; alternatively, [Sheriff Hanks] possessed responsibility for the continued operation of such a policy.

Doc. 39 at 9. Dechant then follows this broad allegation by alleging that Sheriff Hanks had a widespread practice, custom and policy of:

> (a) Failing to review available videos of the interaction of his deputies with citizens in order to ensure that his deputies were respecting use of force guidelines and the requirements of the law;
>
> (b) Failing to require that deputies working under him prepare and file Use of Force Reports when force was required to be used against citizens by his deputies;
>
> (c) Failing to meaningfully investigate complaints of force; and
>
> (d) Failing to punish excessive force by his deputies when it did occur.

*Id.* at 9-10. But missing from his third amended complaint are facts supporting these allegations. Excepting Dechant's encounter with Undersheriff Grayson, Dechant does not identify any encounter when Undersheriff Grayson or another deputy used force on a citizen not under arrest. He likewise does not identify any other instance when Sheriff Hanks failed to review available

4

videos, failed to require his deputies to prepare and file Use of Force Reports, failed to meaningfully investigate complaints of force, or failed to punish excessive force by his deputies. These broad allegations that stem solely from Dechant's own encounter are conclusory and do not plausibly allege an informal custom amounting to a widespread practice. *See Bledsoe v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 2020 WL 6781389, at *65-66 (D. Kan. 2020).[2,3] Thus, Dechant does not plausibly allege an official policy or custom based on the second form.

Moving to the third form, which requires a decision by an employee with final policymaking authority, Dechant does not identify any specific decision by Sheriff Hanks. But he does outline Undersheriff Grayson's conduct during the encounter with Dechant and then alleges that Undersheriff Grayson became a "de facto final authorized decisionmaker as to use of force." Doc. 39 at 3-4.[4] The problem with these allegations is that Undersheriff Grayson is not an employee with final policymaking authority.

Specifically, courts look to state law to determine whether an individual is a final policymaker and assess "where statutory policymaking authority lies, rather than where de facto authority may reside." *Wulf v. City of Wichita*, 883 F.2d 842, 869 (10th Cir. 1989) (first emphasis added). Kansas law vests the sheriff with authority over law enforcement. *See* K.S.A. § 19-801a *et seq.* This authority includes serving and executing warrants either in person or through the

---

[2]  Dechant does offer well pleaded allegations about his own encounter with Undersheriff Grayson. But his own encounter can't form the official policy or custom that caused his injury.

[3]  Dechant responds that he should not be required to allege specific facts until after discovery. This puts the cart before the horse—a plaintiff does not get discovery until he alleges a plausible claim. *Iqbal*, 556 U.S. at 678-79 (noting that the doors of discovery are not unlocked for "a plaintiff armed with nothing more than conclusions").

[4]  The third amended complaint and related briefing are a little muddled on the third and fourth forms that an official policy or custom can take. It seems that Dechant principally alleges that Sheriff Hanks's ratification of Undersheriff Grayson's conduct gave rise to the official policy or custom (fourth form) and is not actually alleging that a decision by Undersheriff Grayson created the official policy or custom (third form) given that Dechant agrees that Sheriff Hanks is the final policymaker. *See* Doc. 43 at 8. But, for completeness, the Court addresses both.

undersheriff or deputies. K.S.A. § 19-812. The undersheriff serves at the pleasure of the sheriff, and there is no statutory delegation of authority from sheriff to undersheriff. K.S.A. § 19-803; *see also Bd. of Cnty. Comm'rs of Cnty. of Lincoln v. Nielander*, 62 P.3d 247, 251 (Kan. 2003) (finding that the undersheriff is the sheriff's subordinate). This law indicates that Sheriff Hanks is the final policymaker on the execution of search warrants and that Undersheriff Grayson is not. *See Bledsoe*, 2020 WL 6781389, at *68 (finding that Kansas Sheriffs are the final policy makers on law enforcement matters, not the undersheriffs); *Estate of Hammers v. Douglas Cnty., Kan. Bd. of Comm'rs*, 303 F. Supp. 3d 1134, 1147 (D. Kan. 2018) (same). Because Undersheriff Grayson is not a final policymaker for the issues underlying this case, his decisions can't form the official policy or custom. Dechant does not plausibly allege the third form.

Dechant next attempts to allege the fourth form, namely that Sheriff Hanks ratified Undersheriff Grayson's conduct. In this vein, Dechant alleges that Sheriff Hanks did not "meaningfully investigate" the encounter between Dechant and Undersheriff Grayson after learning about it or punish Undersheriff Grayson and "by so doing ratified this misconduct after the fact." Doc. 39 at 6; *see also id.* at 3-4 and 10. These allegations are deficient for a few reasons. The allegations do not allege ratification because Dechant does not plausibly allege that Sheriff Hanks delegated authority to Undersheriff Grayson on this issue or that he ratified Undersheriff Grayson's conduct <u>and</u> basis for it. Dechant merely alleges that Sheriff Hanks did not investigate the encounter or punish Undersheriff Grayson, which is not enough. *Lynch v. Bd. of Cnty. Commissioners of Muskogee Cnty., Okla.*, 786 F. App'x 774, 787 (10th Cir. 2019) (noting that "[f]ailing to adequately investigate or punish does not count as ratification" and that such failures do not rise to approving the unconstitutional action and its basis).

And even if Dechant plausibly alleges an official policy or custom based on ratification, he does not plausibly allege that this official policy or custom caused his injury. Stated differently, the ratification of conduct several months after it occurred can't form the policy or custom that directly caused the injury—principals of linear time prevent such a result. *Waller*, 932 F.3d at 1289 ("Basic principles of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation." (citation omitted)); *see also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (noting that a "failure to investigate or reprimand might . . . cause a future violation by sending a message to officers that such behavior is tolerated" but it "does not, however, in and of itself constitute a causal connection").[5]

Lastly, Dechant tries to allege the fifth form. He alleges that Sheriff Hanks never trained Undersheriff Grayson or the other deputies "that they could not use force against a citizen absent a good faith belief that they needed to do so to protect themselves or others, or at a minimum to obtain compliance with a lawful police order." Doc. 39 at 6. He then alleges that Sheriff Hanks "was deliberately indifferent to the rights of [Dechant] and others similarly situated." *Id.* at 10. These allegations are not enough because *Monell* liability stemming from a failure-to-train theory requires the plaintiff to plausibly allege that the failure to train "amounted to deliberate indifference to the rights of persons with whom the untrained employee came into contact." *Pino v. Weidl*, 2020 WL 3960424, at *5 (D. Kan. 2020) (internal quotation omitted). This deliberate indifference standard typically requires a "pattern of similar constitutional violations by untrained employees" so that the entity has notice of the training deficiency and only in rare and narrow circumstances is a pre-existing pattern of violations not required. *Id.* (quoting *Waller*, 932 F.3d at 1285).

---

[5] Dechant includes some arguments suggesting that Undersheriff Grayson could be the source of municipal liability on a theory of ratification. As just noted, ratification is a form for an official policy or custom. But is the final policymaker, not the subordinate, who is the source of liability.

Dechant's allegations do not include any well pleaded facts showing a pattern of similar constitutional violations and his claim does not fall into the narrow exception excusing such facts. His conclusory allegations fail.

After a careful review, Dechant does not plausibly allege an official capacity § 1983 claim based on the theory articulated in *Monell* against either Sheriff Hanks or Undersheriff Grayson. The only well pleaded facts involve his encounter with Undersheriff Grayson (who was not a final policymaker) and actions taken after that encounter. A single incident is not enough to establish a widespread practice or deliberate indifference, and actions taken after the fact can't form the policy or custom that caused the injury. Dechant can't plead for discovery to cure these issues when he is unable to clear the initial hurdle that unlocks the door to discovery. The Court grants the motion and dismisses without prejudice the official capacity § 1983 claims against Sheriff Hanks and Undersheriff Grayson.

### C.  Negligence Claim Against Sheriff Hanks

Dechant also alleges a state law negligence claim against Sheriff Hanks for negligent hiring, training, and supervision.[6] Doc. 39 at 14-16. He alleges that Sheriff Hanks had a duty "to use reasonable care to supervise and control the actions of his deputies" and to use "reasonable care to hire, select and supervise deputies." *Id.* at 15. Dechant alleges that Sheriff Hanks breached this duty when he:

> a) Failed to adequately investigate the background of [Undersheriff Grayson] prior to hiring him;

---

[6]  The Kansas Supreme Court recently clarified that an employer's practices when hiring, training, and supervising its employees all may be evidence of a breach of an employer's duty of reasonable care to prevent harm to third parties caused by its employees acting within the scope of their employment. *Reardon for Estate of Parsons v. King*, 452 P.3d 849, 855-57 (Kan. 2019). They are not separate causes of action. *Id.* at 857. Accordingly, the Court considers Kansas law on negligent hiring, training, and supervision only as theories in determining whether Dechant has stated a plausible claim of negligence against Sheriff Hanks.

8

> b) Failed to adequately train [Undersheriff Grayson] on the use of force and specifically, to insist that [Undersheriff Grayson] and other deputies not use force of any sort unless it was reasonably necessary to prevent a danger to themselves or others, or obtain compliance with a lawful police command, including but not limited to by failing to personally offer such adequate training or ensure that his officers received such training elsewhere;
>
> c) Failed to require that his deputies fill out Use of Force Reports when force wa[s] required to be used by those deputies against citizens, so that their use of force could be adequately reviewed by [Sheriff Hanks] for compliance with the law and with Sheriff's Department policy;
>
> d) In cases where force was used, failed to interview the alleged victims thereof or other officers under his direction and control to ensure that use of force was being applied only where warranted.

*Id.* He concludes by alleging that these breaches caused his injuries. *Id.*

Sheriff Hanks contends that Dechant fails to plausibly allege a negligence claim under any theory, so the Court analyzes each theory. For negligent hiring, "the employer must, by virtue of knowledge of the employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of continued employment of that employee; and the harm which results must be within the risk created by the known propensity." *Wayman v. Accor N. Am., Inc.*, 251 P.3d 640, 649 (Kan. Ct. App. 2011) (citation omitted). Dechant broadly alleges that Sheriff Hanks failed to adequately investigate Undersheriff Grayson's background before hiring him. But he does not allege any problematic quality or propensity that this investigation would have revealed or any specific shortcoming in Sheriff Hanks's investigation. He also does not allege that Dechant's injuries were within the risk created by a such a propensity. As such, he has not plausibly alleged this theory.

Negligent supervision consists of a failure to control an employee, when the employer has reason to believe that the employee poses an undue risk of harm to others. *Id.* at 650. Dechant

9

alleges that Sheriff Hanks failed to require his deputies to fill out use of force forms and failed to interview alleged victims and other officers when an officer used force. His allegations may support a failure to control, but Dechant again fails to allege any reason to believe that Undersheriff Grayson posed an undue risk of harm to others or that Dechant's injuries were within this risk.

Turning to the final theory, negligent training requires that an employer have reason to believe that an employee is not properly trained. *Thomas v. Cnty. Comm'rs of Shawnee Cnty.*, 198 P.3d 182, 193 (Kan. Ct. App. 2008). It also requires a plaintiff to demonstrate that more or better training would have prevented the harm. *Estate of Belden v. Brown County*, 261 P.3d 943, 968 (Kan. Ct. App. 2011). Dechant fails to allege any prior instances of excessive force by Undersheriff Grayson or other deputies that would give Sheriff Hanks reason to believe that they were not properly trained on the use of force. Likewise, he does not allege how additional or different training from what Undersheriff Hanks received at the Kansas Law Enforcement Training Center would have averted the harm.

Without allegations of the existence of any facts suggesting Undersheriff Grayson presented an undue risk of harm and reasons Sheriff Grayson should have known, Dechant fails to allege a plausible negligence claim against Sheriff Hanks under any theory. *See Chambers v. Simon Prop. Grp., L.P.*, 2013 WL 1947422, at *4 (D. Kan. 2013) (granting dismissal of a negligent hiring claim because the plaintiff failed to allege facts suggesting a security guard had a propensity for violence or reasons his employer should have known). The Court dismisses without prejudice the Kansas negligence claim against Sheriff Hanks.[7]

---

[7] Because the Court finds that Dechant fails to allege a negligence claim against Sheriff Hanks, it does not reach the immunity arguments. But, without deciding, the Court notes that immunity seems to be a significant hurdle to asserting these claims.

## IV. CONCLUSION

In sum, Dechant fails to state a § 1983 official capacity claim against either Undersheriff Grayson or Sheriff Hanks and fails to state a state law negligence claim against Sheriff Hanks. Because the dismissal is based on pleading deficiencies and given the other facts of this case, the Court dismisses the claims without prejudice.

THE COURT THEREFORE ORDERS that Undersheriff Grayson's and Sheriff Hanks's Motion to Dismiss (Doc. 40) is GRANTED. The Court DISMISSES WITHOUT PREJUDICE Dechant's official capacity § 1983 claim against Undersheriff Grayson and all his claims against Sheriff Hanks.

IT IS SO ORDERED.

Dated: January 7, 2021                                    /s/ *Holly L. Teeter*
                                                         HOLLY L. TEETER
                                                         UNITED STATES DISTRICT JUDGE